UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JERMAINE D'SHANN DODD, <br><br> Plaintiff, <br><br> v. <br><br> INDIANA DEPT. OF CORRECTION, et al., <br><br> Defendants. | CAUSE NO. 3:21-CV-972-JD-MGG |

OPINION AND ORDER

Jermaine D'Shann Dodd, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Section 1915A(b)(1) requires dismissal of a lawsuit—without an evidentiary hearing—when the facts alleged in the complaint are "delusional" or "incredible." *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002); *see also Holland v. City of Gary*, 503 Fed. Appx. 476, 477 (7th Cir. 2013) ("[A] dismissal for frivolousness under § 1915 (the IFP statute) does not require a judge to accept fantastic or delusional factual allegations.").

Dodd was incarcerated at the Indiana State Prison (ISP) when he filed his complaint. ECF 1. He has since been transferred to the Miami Correctional Facility. ECF 25. During the events in question, ISP was on a "modified lockdown" due to the Covid-19 Pandemic. ECF 1 at 3. Dodd was housed in D-Cell House, a disciplinary segregation unit. On April 27, 2021, a uniformed Indiana State Police officer came to Dodd's cell, asked him to cuff-up, and told him he was moving cell locations within D-Cell House. Dodd informed the officer:

> my life would be endangered due to the turbine-electrical fans, 'displayed along the walls of D-Cell House' and the interference of such (B.C.I.) and cochlear devices and sub-retinal cameras implanted within my face and body from a left-eye orbital eye socket surgery from 2018 of October would cause my face and body to hurt with pain if I was to move to the 200-East side range location of D-Cell House.

*Id*. Dodd claims Correctional Officer Sergeant A. Allmon then witnessed him from a catwalk outside the fence talking to a "very – tall – tall street clothed gentleman about 6-10 in height, whom pulled out an expensive phone – cellular phone and hit the record button and placed it in his upper front pocket of his shirt, recording my testimony of how I was being treated and mistreated." Sgt. Allmon walked away when the recording began. Subsequently, Correctional Officer Captain Itoto handcuffed Dodd and escorted him towards the "officers' station" and "booth." *Id*. at 4.

Dodd noticed several correctional officers and officials (including Assistant Superintendent Dawn Buss), nurses, and contractors "holding black-long rifles." *Id*. As Dodd was being placed into the holding cage, Sgt. Allmon "pricked the plaintiff Mr. Dodd in the upper-back with a 'small white apparatus' or 'device,' about 'thumb-

2

sized.'" *Id*. Sgt. Allmon then handed the "small white apparatus or device" to Correctional Officer Bradbury who placed it on "the back of a black pepper ball sort-team gun which Officer Bradbury was holding in his hand." *Id*. at 4-5. Officer Bradbury looked at Sgt. Allmon "in bare disbelief, and then looked at the plaintiff Mr. Dodd like Officer Bradbury had nothing to do with such an elaborate plan of such an attempt murder of Sgt. A. Allmon's scheme on the plaintiff's Mr. Dodd's life." *Id*. at 5.

Dodd's blood pressure rose immediately, and he started to become "sick and dizzy." *Id*. As part of an involuntary "affirmative defense reaction," Dodd spit in Sgt. Allmon's face. Dodd was placed in the shakedown cage, and he was threatened by three to four armed guards with large black rifles that they kept raising in his direction. Meanwhile, eight to ten uniformed Indiana State Police officers stood nearby and looked at Dodd "hopelessly, afraid, scared, standing inside a football huttle (sic) helplessly for the plaintiff's Mr. Dodd's well-being and personal safety." *Id*. at 5–6. Assistant Superintendent Buss stood nearby, smiling, and she did not intervene in the events described above. Dodd sat on the floor of the shakedown cage and screamed that he was having a heart attack because his heart was "beating abnormal[ly]." *Id*. at 6. No one assisted him. Instead, the ISP officers pointed their rifles at him.

Correctional Officer Wolff "mased the plaintiff Mr. Dodd in the eyes, nose, and mouth with a very-very extra large canister of K-19 (O.C.) spray from his hip." *Id*. Officer Wolff proceeded to unlock the holding cage and, according to Dodd, "rough[ed] me up a little." *Id*. at 7. Officer Wolff then asked him what was in his "right ankle sock and black boot." *Id*. Dodd replied that it was a print-out of his inmate trust account

3

ledger. During this altercation, Assistant Superintendent Buss, Captain Itoto, and Sgt. Allmon stood nearby, smiling. Dodd speculates this is because he had filed a lawsuit against Assistant Superintendent Buss several years prior. A short time later, Officer Wolff, Captain Itoto, and Sgt. Allmon placed leg shackles tightly around Dodd's ankles and forced his forehead and neck against the gate as they attempted to move him.

Dodd was immediately taken to the ISP medical unit where he was treated for his high blood pressure and abnormal vitals. He was also given a cold decontamination shower to remove the mace. During the shower, Officer Wolff accused him of being a spy or confidential informant for the Indiana State Police. Dodd denied that accusation.

During his stay in the medical unit, Dodd was "electrocuted by some form of electrical wireless wires which came out of the cell walls and from the bottom and base of the open-steel bunk that rested upon the steel rusted painted floor." *Id*. at 9. Dodd claims the "hot burning wires penetrated the plaintiff's flesh, penis, anus, and skin." *Id*. There was no mattress in this room, he was not provided with his legal papers or books, clothes, or "religious advisors," and he had only partial access to showers and hygiene materials for fifteen to sixteen days. *Id*. At one point, Sgt. Allmon threw his dinner tray and food on the floor.

On June 2, 2021, Dodd filled out a healthcare form stating his glasses were lost and/or confiscated during the altercation, so he requested a new pair because he couldn't "see to[o] good (sic)." *Id*. at 10. On June 4, 2021, ISP medical staff responded, "You will be scheduled for eye dr. You get a free pair every (2) years." *Id*. On September 19, 2021, he filled out another healthcare request for the glasses, stating that he needed

4

them to read his legal materials because "sub-retinal cameras ha[d] been installed in Dodd's eyes in 2018 of October." *Id*. The medical staff responded the next day by referring him back to the previous response.

Dodd alleges he experienced mental and emotional suffering due to the physical injuries caused by the "attempted murder upon the plaintiff's Mr. Dodd's life and such chemical agent of such chemical substance that was pricked and injected into the plaintiff's Mr. Dodd's back." *Id*. He says he suffers from memory loss, dizzy spells, and hot flashes, but he admits he has received ongoing "mental health treatment and has been prescribed mental health medication." *Id*.

Dodd claims the defendants violated the Eighth Amendment when Sgt. Allmon "attempted murder" involving the "white small thumb size apparatus" and the others failed to intervene. He also alleges these actions constituted the tort of assault and battery under Indiana Code 35-42-2-1(2)(F). Dodd seeks compensatory and punitive damages from the defendants in their individual capacities.

As noted above, the court is required to dismiss a lawsuit as frivolous under section 1915A(b)(1) when the facts alleged are delusional or incredible. *Gladney*, 302 F.3d at 774.

> [A] court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional. As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them.

5

*Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (quotation marks and citations omitted). Thus, a case can be dismissed without a response from the defendants where "the facts alleged in the complaint are . . . unbelievable, even though there has been no evidentiary hearing to determine their truth or falsity." *Gladney*, 302 F.3d at 774.

Here, the main thrust of Dodd's complaint is that Sgt. Allmon attempted to murder him with some type of poison placed on an unidentified apparatus while numerous other officials either stood idly by or intentionally—albeit silently—endorsed the conspiracy to kill him. Although not every single allegation in the complaint is factually impossible, collectively it is clear his claims are "fanciful, fantastic, and delusional." *Denton*, 504 U.S. at 33. Therefore, this case must be dismissed with prejudice as frivolous. *See e.g. Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (noting that the term frivolous "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation"); *Gladney*, 302 F.3d at 774 (affirming dismissal of complaint as frivolous, where plaintiff alleged multiple guards left his cell unlocked at night allowing other inmates to drug him with a needle and sexually assault him while he slept); *Lee v. Clinton*, 209 F.3d 1025, 1025 (7th Cir. 2000) (affirming dismissal of two complaints as frivolous, where plaintiff alleged the government had "'bio-chemically and bio-technologically infect[ed] and invade[d]'" various people including [plaintiff] with a mind reading and mental torture device"); *see also Schottler v. Wisconsin*, 388 Fed. Appx. 547 (7th Cir. 2010) (affirming dismissal of complaint as frivolous, where plaintiff alleged someone had "inserted a metal pin in his head" and various state officials and police officers had purposely ignored his pleas for help); *Walton v. Walker,* 364 Fed.

6

Appx. 256, 257–58 (7th Cir. 2010) (affirming dismissal of complaint as frivolous, where plaintiff alleged a broad conspiracy involving a variety of prison officials who wanted to kill him that "point[ed] in the direction of paranoid fantasy" and "did not meet the threshold of plausibility").

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED as frivolous pursuant to 28 U.S.C. § 1915A. The clerk is DIRECTED to close this case.

SO ORDERED on September 13, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT